Milliken *v.* Warren.

———◆———

WESTON F. MILLIKEN & others *vs.* GEORGE WARREN & others.

At common law, a vender of goods has a lien thereon, so long as they remain in his possession unpaid for according to the terms of the sale,

If the vendee give his negotiable promissory note, payable on time, for the purchase-money, and then become insolvent while the goods yet continue in the possession of the vender, the latter may retain them until the price be paid, provided the note remain unnegotiated in his possession, so that it may be surrendered on discharge of the lien.

ON REPORT.

TROVER, for three thousand and twenty-nine bushels of corn.

The court were to render such judgment as the law and facts required.

The case is sufficiently stated in the opinion.

*Shepley & Strout,* for the plaintiffs.

1. The corn was purchased on joint account, and the possession of the co-tenant was the possession of Bradley, Coolidge & Rogers. *Cushing* v. *Breed,* 14 Allen, 376. *Beaumont* v. *Crane,* 14 Mass. 400.

2. The corn being stored by a third person, the possession of such third person was the possession of defendants and Bradley, Coolidge & Rogers jointly, and no separation of the corn was necessary to pass both title and possession. *Hatch* v. *Bayley,* 12 Cush. 29. *Taxworth* v. *Moore,* 9 Pick. 347.

3. In either of the above cases no right of stoppage *in transitu,* and no lien for the purchase-money remained in the defendants, the possession as well as the title to the corn vesting in Bradley, Coolidge & Rogers, by operation of law, and no separation of the corn being necessary for this purpose.

4. The defendants had only given their notes to King, Thurlow & Company for the corn in question; Bradley, Coolidge & Rogers had given their notes to defendants for the same purpose. Now, whatever rights King, Thurlow & Co. might have had to retain the corn for payment of price, the defendants had no such right of detention.

5. The defendants, by accepting the one hundred dollars tendered by plaintiffs, became their agents, and cannot now set up a lien for the non-payment of the notes given for the price of the corn by Bradley, Coolidge & Rogers.

6. By giving Bradley, Coolidge & Rogers a fixed credit for two and four months, and taking their notes upon that time, the defendants lose all lien for payment. *Barrett* v. *Goddard,* 3 Mason, 107. 2 Kent's Com. 677.

The defendants assumed complete and exclusive control of the corn, and sold it, and are liable to plaintiffs for the value of their share.

*N. Webb*, for the defendants, cited *Parks* v. *Hale*, 2 Pick. 212; *Arnold* v. *Delano*, 4 Cush. 33; *Bloxam* v. *Saunders*, 4 B. & C. 941; *Owenson* v. *Morse*, 6 T. R. 64; *Townley* v. *Crump*, 4 A. & E. 52; *White* v. *Wilks*, 5 Taunt. 176; *Wallace* v. *Breeds*, 13 East, 522; *Austen* v. *Craven*, 4 Taunt. 644; *Busk* v. *Davis*, 2 M. & S. 397; *Hodgdon* v. *Lay*, 7 T. R. 446; *Feise* v. *Ray*, 3 East, 93; *Newhall* v. *Vargas*, 13 Maine, 93; *Dixon* v. *Yates*, 5 B. & Ad. 313; *Miles* v. *Yorton*, 2 Cromp. & M. 512; *Gibson* v. *Carruthers*, 8 M. & W. 341; *DeWolfe* v. *Howland*, 2 Paine's C. C. R. 356.

DICKERSON, J.    TROVER, on report.    On the 30th day of Oct., 1866, the defendants, under the firm of S. T. Raymond & Co., purchased a quantity of corn of Messrs. King, Thurlow & Co., giving their notes in payment therefor, and taking delivery of the key to the building in Portland where the corn was stored.

The plaintiffs claim that this corn was bought on joint account of defendants and Messrs. Bradley, Coolidge & Rogers, and that having purchased one-half of it for a valuable consideration of the latter firm, and demanded the sum of the defendants, they are entitled to maintain this action for that amount.

The defendants deny such joint purchase, and allege that the corn was bought exclusively on their own. account; that they sold the half in controversy to Bradley, Coolidge & Rogers, taking their notes therefor on two and four months, without giving any delivery of the corn; that Bradley, Coolidge & Rogers have never paid these notes, but became insolvent Dec. 11, 1866, and that they have a right to retain the corn until the purchase-money has been paid or tendered.

It appears from the evidence that the plaintiffs paid Messrs. Bradley, Coolidge & Rogers a valuable consideration for the corn in controversy.    In order further to establish that theory of the case, the plaintiffs rely mainly upon the testimony of Mr. Bradley, the tender by them of $100 for insurance and storage of the corn, and the proper transactions between the defendants and Bradley, Coolidge & Rogers respecting it.    Mr. Bradley, of the firm of Bradley, Cool-

idge & Rogers, testifies that Mr. Bickford, one of the defendants, about the 30th day of Oct., 1866, informed his firm "that he knew of a lot of corn that he could buy, and wanted to know if we would take half of it at the price, which was $1.30. We told him we would. He came in and said he had purchased the corn. We told him to have it insured on our account, one-half of it, and he said he would."

While this testimony would seem to indicate a purchase on joint account, it is by no means irreconcilable with the theory that the defendants made the original purchase on their own account, and agreed to sell one-half of the amount to Bradley, Coolidge & Rogers upon the same terms as it was bought. The statement of Bick ford, as testified to by Bradley, that "he knew of a lot of corn that he could buy, and wanted to know if we would take half of it;" and the reply of Bradley, at least, leaves it uncertain whether it was the understanding of the parties that it was to be a joint purchase, or whether the defendants were to make the designed purchase, and Bradley, Coolidge & Rogers were to buy of them.

The tender of the $100 for storage and insurance made by the plaintiffs to defendants, affords very slight evidence of what the real transaction was between the defendants and Bradley, Coolidge & Rogers, as the plaintiffs were not actually cognizant of the facts, but acted, doubtless, upon information, whether true or false, received from their venders.

The coincidence as to date and time of payment, between the notes given by the defendant for the corn, and those received by them of Bradley, Coolidge & Rogers for one-half of it, is such as might naturally be expected in any view of the case taken by the parties. Whether the defendants were in fact joint purchasers with Bradley, Coolidge & Rogers, or subsequently sold to them, on time, a part of their own original purchase without any advance, it is reasonable that they would provide that the notes taken should correspond in date and time of payment with those given by them.

After all, there remains the undisputed fact that the defendants were alone known to King, Thurlow & Co., as the purchasers of

the corn; the other fact, also, that Bradley, Coolidge & Rogers gave their notes to the defendants for half of their purchase, the refusal of the defendants to receive the $100 tendered, as payment for storage and insurance, for any such purpose, and the positive testimony of Bickford that the defendants were exclusively interested in the original purchase, and that he subsequently sold the corn in controversy to Bradley, Coolidge & Rogers.

The plaintiffs' assumed the burden of proving a purchase of the corn on joint account of the defendants and the plaintiffs' venders; and we think the evidence is unsufficient to establish that proposition.

It appears that the plaintiffs' venders took no delivery, actual or constructive, of the corn, when they purchased it, and that it has ever since remained in the possession of the defendants. It further appears that the notes given to the defendants for the corn sued for, have never been paid, and that they are still in the hands of the defendants, and have not been negotiated by them. It is also in evidence that the plaintiffs' venders became insolvent after they bought the corn of the defendants and before the plaintiffs demanded it of them.

A vender of goods has a lien upon them at common law, so long as they remain in his possession, and the vender neglects to pay the price according to the conditions of the sale; and if the vendee becomes insolvent, while the goods are yet in the hands of the vender, the latter may retain them until the price is paid. This rule of law is applicable, though a negotiable promissory note has been given for the purchase-money, if it remains in the hands of the vender, and has not been negotiated, so that it may be delivered up on discharge of the lien. *Parks* v. *Hall*, 2 *Pick*, 211. *Arnold* v. *Delano*, 4 Cush. 41.

Under the circumstances of this case, the plaintiffs' venders had no right to a delivery of the corn in controversy, until they had paid, or tendered payment of the notes given for it; and the plaintiffs stand in no more favorable position.

In deciding this case, we have not thought it necessary to deter-

mine whether the legal consequences claimed by the plaintiffs' coun-
sel would follow if the corn had been purchased on joint account.
If we have found such purchase, it might have been important to
inquire whether, in view of the insolvency of the plaintiffs' venders,
and the other undisputed facts in the case, the right of the defend-
ants to retain the corn until it had been paid for, would exist with
equal force as it now does.                    *Judgment for defendants.*

APPLETON, C. J.; CUTTING, BARROWS, DANFORTH, and TAP-
LEY, JJ., concurred.